UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | Criminal No.: 05-452(PLF) |
| GERRY D. MATHEWS, : | |
| : | |
| Defendant. : | |
| _____ : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in aid of sentencing regarding the defendant, Gerry D. Mathews.

I. BACKGROUND

For more than twelve years, the defendant Gerry D. Mathews embezzled money from the lawyers and law firm of Fried, Frank, Harris, Shriver & Jacobson, LLP ("the law firm"). She took over $350,000 from the partners, their professional corporations, and from the law firm. The defendant embezzled more than $173,000 just by using the lawyer's money to pay her own credit card bills. At times, the defendant altered the amounts on the checks to the credit card companies, changing a $36 check or a $54 dollar check into one for $3,600 and $5,400. She then used these checks to pay her own debts to the credit card companies. The defendant also embezzled money by diverting checks made payable to the lawyers; she endorsed her own name under the forged endorsement of the lawyer and then cashed or deposited the checks into her own bank account.[1]

---

[1] Many checks from the professional corporations, especially checks from the earlier years, are missing from the law firm files. Because of the age of the records (dating from 1995), the banks were unable to provide copies. Thus, although we know that the defendant managed the lawyer's professional corporations and we know that the defendant diverted other checks from the lawyer's professional corporations, we do not know anything about these missing checks, such as the payee,

In 1997, the defendant began embezzling money from the law firm's bank account. The defendant wrote her own name as a secondary endorsement on the law firm checks which were made payable to some of the firm's partners. She then either cashed the checks or deposited the checks into her own account or an account belonging to a family member. Similarly, the defendant embezzled money from a third-party check. In 2004, a partner gave the defendant a $28,511 check made payable to the partner's professional corporation. The partner instructed Mathews to deposit the check into his professional corporation's account. Instead, in or about November 2004, the defendant deposited the check into a bank account held jointly with her husband ("Suntrust Account").

## II. INVESTIGATION

On October 21, 2005, special agents with the Federal Bureau of Investigation (FBI) interviewed the defendant. The defendant's husband, P. Mathews was also present for most of the interview.[2] The defendant told the agents that she had been under stress from dealing with her husband's health issues (he had been in poor health, and was hospitalized in February 2003) and from an "accounting error" which resulted in her failure to file a tax return and payment for one of the professional corporations. The defendant told the agents that the stress culminated at the end of May 2005, and that the Saturday of the Memorial Day weekend, she fainted and then was taken to

---

endorsor, or the method of negotiation. While the law firm may contend that these checks must have been evidence of further embezzlement by the defendant, the government cannot withstand its burden of proof necessary to include these monies in the amounts embezzled when there is no check and when others had signatory authority over the professional corporation bank accounts.

[2]P. Mathews owns a heating and cooling business; more information regarding this business is discussed below.

a hospital.[3] The defendant admitted to the agents that she paid her own credit card debts with checks from the professional corporation accounts. She admitted that she altered the checks after the lawyers signed the checks and specifically identified ten such checks. The defendant also confirmed her signature as secondary endorser on checks belonging to several law firm partners; she could think of no reason why her name would be on the checks.

In November 2005, special agents from the FBI executed two court-authorized seizure warrants. The first warrant authorized the seizure of the $28,511 in funds deposited into the defendant's joint Suntrust account with her husband for the third-party check diverted by the defendant.

The second warrant authorized the seizure of $8,086.71 from the defendant's husband's business account. By way of background, the defendant's husband maintained a business bank account for his heating and cooling business. This account was capable of accepting credit card payments. The defendant used her American Express credit card to make payments into her husband's business account; she then paid her American Express credit card bill with embezzled funds from the lawyers at the law firm. In all, the defendant paid her husband's business account more than $9,000 using her American Express card. A judge authorized, and the government seized $8,086.71 from this account.

Taken together, the government seized about $36,500 pursuant to both seizure warrants. After publishing costs spent by the U.S. Marshals, the funds returned to the victim equaled $36,208.91. Subtracting this amount from the total embezzled funds of $350,541, the amount of

---

[3]The law firm reports that their security records show that someone using the defendant's building access key entered the garage lobby, elevators, and the law firm space on the Monday of the Memorial Day weekend, that is, Monday, May 30, 2005.

restitution which should be ordered in this matter is $314,260.09, payable to the law firm of Fried, Frank, Harris, Shriver & Jacobson, LLP .

III. SENTENCING ANALYSIS

In the plea agreement, the defendant and the government agreed that the offense level based upon the stipulated facts totaled 18. See U.S.S.G. § 2B1.1 (base offense level 6 increased by 12 due to loss of more than $200,000 but less than $400,000). The parties also agreed that defendant was entitled to a three level reduction for acceptance of responsibility, reducing her offense level to 15. Based upon a criminal history category I, defendant faces a range of 18 to 24 months in Zone D.

IV. CONCLUSION

In determining the appropriate sentence, the Court "shall consider . . . the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law . . . to provide just punishment for the offense. . . and to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A). The government respectfully requests the Court to impose a period of incarceration within the guideline range.

    Respectfully submitted,

    KENNETH L. WAINSTEIN
    United States Attorney
    for the District of Columbia

By: _____
    VIRGINIA CHEATHAM
    Assistant United States Attorney
    D.C. Bar # 411980
    Fraud and Public Corruption Section
    555 4th Street, N.W.
    Washington, D.C. 20530
    (202) 514-9732

CERTIFICATE OF SERVICE

I hereby certify that on May ___, 2006, a copy of the foregoing memorandum has been sent via first class mail to the counsel for the defendant, Richard M. McGill, 5303 West Court Drive, P.O. Box 358, Upper Marlboro, Maryland, and to Probation Officer Elizabeth Suarez.

_____
VIRGINIA CHEATHAM
Assistant United States Attorney